IN THE MATTER OF JERRY R. BECHHOLD, ATTORNEY AT LAW, RESPONDENT.

No. 87-525.
Decided Dec. 29, 1988.
Order for Disbarment Jan. 18, 1989.
771 P.2d 563.

Frank B. Morrison, Jr., Helena, for respondent.
Calvin L. Braaksma, Landoe, Brown, Planalp & Kommers, Bozeman, Sp. Investigator.

OPINION AND ORDER

This cause comes before us on review under Rule 9(E) of the Rules for Lawyer Disciplinary Enforcement of this Supreme Court, promulgated August 24, 1983.

Following proceedings under the rules, the Commission on Practice on May 10, 1988, recommended discipline for the attorney, Jerry R. Bechhold, as follows:

1. That the Respondent, Jerry R. Bechhold be suspended for the practice of law in the State of Montana for a period of three (3) months.

2. That the Respondent be publicly censured by the Supreme Court of the State of Montana.

3. That the Respondent be assessed and required to pay the costs of these proceedings, and that such costs be paid in full before he again commences to practice law.

The recommendation of the Commission on Practice was not unanimous. Three members of the Commission filed a minority report, in which, not being critical in any way of the majority, the minority contended there were no mitigating circumstances in the case which would allow a recommendation of suspension for three months and that a more just result would be a suspension for six months.

Without disregarding in the slightest the work of the members of the Commission on Practice in this cause and the value of their opinions (it is unfortunate that the public is not more aware of the sacrifice and effort that the members of the Commission devote to lawyer discipline), we determine under the clear and convincing evidence in this cause that the respondent must be disbarred from the · practice of law in the courts of this state.

I

Jerry R. Bechhold was admitted to practice before the state courts of the State of Montana on January 30, 1986. On December 2, 1987, the Commission on Practice filed in this Court its complaint charging respondent Bechhold with seven counts of misconduct in his course of practice of law. After due proceedings before the Commission on Practice, the Commission found him guilty of four of the seven counts, and on June 1, 1988 filed its findings, conclusions and recommendations. Respondent filed his objections thereto on September 13, 1988. Briefs and memoranda were received from respondent, his counsel, and counsel for the Commission. Request for oral argument has been made by counsel for the respondent, but we determine that oral argument is unnecessary. The cause is therefore ripe for decision.

II

In Count IV of the complaint against respondent, he was charged with having violated the provisions of Rule 4.4 of the Rules of Professional Conduct promulgated by this Court, by using methods of

inquiry which served only to embarrass and burden a third party, Beth Corbin. Rule 4.4 provides as follows:

"In representing a client, a lawyer shall not use means that have no substantial purpose other than to embarrass, delay or burden a third person, or use methods of obtaining evidence that violate the legal rights of such person."

The Commission found that Beth Corbin was an employee of State Farm Claims in Bozeman, Montana. Respondent represented a claimant whose claim had been denied by State Farm, an insurer in this state. Respondent contacted Beth Corbin about the denial of the claim.

Respondent called Beth Corbin repeatedly, seven or eight times a day for several days, and Beth Corbin testified before the Commission that respondent was rude in telling her he did not want to talk to her because she did not know anything.

Another witness testified from direct knowledge that respondent attempted to serve papers on State Farm's insurer by delivering them to the claims office and swearing there that he was "tired of this bullshit or shit" and referred to Beth Corbin as "that bitch out there." Respondent testified that he did not remember calling Beth Corbin a "bitch," but admitted to hard feelings between her and him.

The Commission found that clear and convincing evidence established that respondent had violated Rule 4.4 of the Rules of Professional Conduct. The standard of proof under the rules of practice is that charges of misconduct shall be established by clear and convincing evidence. Rule 15(C). We concur with the findings of the Commission on this count.

## III

In Count V of the Commission's complaint against the respondent, he was charged with violating Rule 1.1 and Rule 3.1 of the Rules of Professional Conduct. Rule 1.1 provides as follows:

"A lawyer shall provide competent representation to a client. Competent representation requires the legal knowledge, skill, thoroughness and preparation reasonably necessary for the representation."

Rule 3.1 provides in part as follows:

"A lawyer shall not bring or defend a proceeding, or assert or controvert an issue therein unless there is a basis for doing so that is

not frivolous, which includes a good faith argument for an extension, modification or reversal of existing law."

The evidence under this count established that one James Bogen was the owner of Dud's and Sud's Laundry and Car Wash in Bozeman. Bogen thought his property taxes were too high compared with property taxes levied on other similarly situated businesses in the Bozeman area. He met one Bud Strode with whom he discussed his problem, and Strode referred him to Bechhold for consultation. Bechhold undertook to represent Bogen, apparently with the understanding that Strode would be doing research for Bechhold but that Bechhold would be the responsible attorney. Documents were prepared, including a complaint for filing in the Federal District Court in Montana that charged violation of Bogen's civil rights. Bogen's father is a lawyer practicing in Minnesota, and Bogen has a friend in Billings, Laura Lee, who is also a lawyer and tax specialist. Bechhold on request of Bogen mailed to Laura Lee a copy of his proposed complaint, stating that if he did not hear from her it would be filed in the District Court. Strode apparently was on the verge of traveling to Helena, Montana to file the complaint. Bogen, his caution coming to the fore, conferred both with Laura Lee and his father and then told Bechhold that he wanted to put the whole matter on hold. Bogen was confused because he was receiving conflicting information from Strode and Bechhold. Bogen was of the opinion that Strode was acting beyond his capacity. Bogen was billed for and paid $1,900 to Bechhold for his representation. Bechhold apparently paid Strode. The evidence indicates that the complaint essentially was formulated by Strode. He described himself as a retired electro-mechanical engineer, now doing legal research. His examination by members of the Commission during his testimony would constitute a textbook example of an evasive witness. Nevertheless he testified that ninety percent of the words in the complaint were his, including words that charged the County Assessor of Gallatin County with fraudulently and invidiously discriminating against Bogen. It was partly these words that alerted Bogen, because his quarrel was not particularly with the County Assessor.

The Commission concluded that Bechhold had violated Rule 1.1 of the Rules of Professional Conduct by failing to provide competent representation for Bogen, that he had delegated the research and document drafting work to Bud Strode, a person not competent to do such work, that Bechhold did not properly supervise Bud Strode,

and that Bechhold himself did not have the legal knowledge necessary competently to represent Bogen in the matter.

Respondent argues now that he had not approved the documents, but his letter to Laura Lee in January, 1987, indicated that he intended to file the complaint and the related documents that month which of course indicates his approval of the language therein and the remedy sought.

Laura Lee testified to her opinion that there was no evidence of civil rights violations by the officials charged therewith in the complaint, nor any evidence of improper conduct by these officials. She feared that Bogen would subject himself to sanctions if the strongly-worded petition were filed. Bechhold justified the language by contending that it was contained in a pleading form in *American Jurisprudence Pleadings and Practice.* The Commission however determined that the language was uniquely inappropriate in the content of the legal problem presented.

The evidence on this count demonstrates clearly and convincingly that Bechhold had not made an adequate investigation of the facts, that he had formulated a legal theory without adequate legal research, that his allegations would have embarrassed his client, who in fact thought the local officials were favorable to his cause though unable to help him, and that Bechhold probably was not competent to handle the matter in the first place. We sustain the conclusion of the Commission on Practice with respect to Count V.

## IV

In Count VI, it was alleged that Bechhold had violated the provisions of Rule 1.1 and 3.1 of the Rules of Professional Conduct and that he failed to exercise the degree of competency required of an attorney in prosecuting an action without a good faith basis. We have set forth the provisions of those Rules in the material foregoing.

This count involves a client named Wayne Easley. Easley had been an employee of the Burlington Northern Railroad where he was injured giving rise to a claim against the Railroad. In this matter Easley was represented by attorney Douglas Harris. A settlement was achieved, and a written agreement for a release of all claims was entered into before suit was filed. The amount of the settlement was $55,000.

Later, Easley was involved in a motorcycle accident. His treating

physician in examining x-rays discovered injuries that the doctor said could not have been caused by the motorcycle accident and that they were caused by the prior accident involving Burlington Northern.

Bechhold was representing Easley in connection with the motorcycle accident, and filed a complaint on behalf of Easley against Burlington Northern in connection with the prior injuries. The complaint was filed in state district court alleging essentially that Burlington Northern had entered into the $55,000 settlement agreement in bad faith, and asked for punitive damages. The complaint did not allege that the settlement agreement should be set aside.

The complaint had been filed on October 2, 1986. On January 7, 1987, Bechhold filed a motion to withdraw as counsel of record, but that was never acted upon by the court.

Burlington Northern filed a motion to dismiss which was granted by the district court on March 16, 1987 by Judge Thomas A. Olson. In that order, Judge Olson also imposed sanctions against Bechhold in the sum of $1,500 on the grounds that Bechhold had failed properly to research the matter, did not file the claim under the Federal Employers' Liability Act, and failed adequately to explain to the court why the previous settlement was not binding upon the parties.

Bechhold filed a motion for reconsideration of the defendant's motion for sanctions and filed a brief in support of that motion. Burlington Northern filed a brief in opposition to the motion for reconsideration. The court heard oral argument on the motion and gave respondent ten days in which to file a final brief before the court ruled. Thereafter on April 13, 1987, Bechhold filed a brief, apparently under the Judge's briefing schedule, but the brief was directed to the matter of the dismissal of the complaint rather than to the question of sanctions. In his brief Bechhold asserted the contention that mutual mistake was the basis on which to vacate the liability release. On January 26, 1988, the court denied respondent's motion for reconsideration. Bechhold filed a notice of appeal to the Supreme Court. The cause came before this Court in cause No. 88-255, *Easley v. Burlington Northern,* decided October 13, 1988, [234 Mont. 290,] 762 P.2d 870, 45 St.Rep. 1915. The appeal was dismissed because the notice of appeal had been untimely filed, by reason of which this Court did not acquire jurisdiction of the appeal.

Although the conclusions of the Commission preceded the decision by our Court in cause No. 88-255, the Commission concluded that clear and convincing evidence showed that Bechhold did not provide

competent representation to his client Wayne Easley. The Commission concluded that Bechhold did not possess the legal knowledge, skill, thoroughness and preparation reasonably necessary to represent properly his client in that matter, and thereby violated Rule 1.1 of the Rules of Professional Conduct. As the Commission concluded, when he moved for reconsideration of the sanctions, and was given time to file a written brief, he filed a brief which was not directed to the sanctions but rather to the court's order granting the motion to dismiss. Respondent argues now that his brief attacking the motion to dismiss was properly filed since if the brief was successful there would be no need for sanctions. Nonetheless, his actions relating thereto, and his subsequent handling of the case demonstrates, as the Commission concluded, a lack of understanding, competence, knowledge and skill in handling the Wayne Easley matter. We sustain the Commission with respect to Count VI.

We should note that District Judge Olson testified before the Commission in connection with the *Easley v. Burlington Northern* case. Judge Olson pointed out that the case, if it were properly handled, would be filed under the Federal Employers' Liability Act, and under that Act punitive damages are not allowable, nor are damages allowable against a fellow employee under that Act, although Bechhold had added a fellow employee as a codefendant in the cause. It was Judge Olson's opinion that Bechhold's performance in that Case was below what he would expect from an attorney and even from a new member of the Bar. We uphold the findings and conclusions of the Commission on this count.

## V

In Count VII, the complaint by the Commission against the respondent charged him with violations of Rule 8.4(b) and (c) and Rule 1.2 of the Rules of Professional Conduct, and with the violation of §§ 45-5-601 and 45-5-602, MCA. We refer to the complaining client as "Jane Doe," as did the Commission on Practice.

Bechhold had represented Jane Doe in a divorce matter. The complaint charged that he offered to cancel her attorney's fees or pay her in cash if she would entertain or perform sexual favors for respondent, and certain clients of respondent's. It was further charged that Bechhold applied pressure on Jane Doe to engage in criminal activity which was morally abhorrent to her, and in violation of his fiduciary duty owed to his client.

The Rules provide as follows, in pertinent part:

"Rule 8.4, *Misconduct*. It is professional misconduct for a lawyer to:

". . .

"(b) commit a criminal act that reflects adversely on the lawyer's honesty, trustworthiness or fitness as a lawyer in other respects;

"(c) engage in conduct involving dishonesty, fraud, deceit or misrepresentation;

". . .

"Rule 1.2, *Scope of Representation*

". . .

"(d) a lawyer shall not counsel a client to engage, or assist a client in conduct that the lawyer knows is criminal or fraudulent, but a lawyer may discuss the legal consequences of any proposed course of conduct with a client and may counsel or assist a client to make a good faith effort to determine the validity, scope, meaning or application of the law."

Sections 45-5-601 and 45-5-602, MCA, are statutes that deal with prostitution, and the promotion of prostitution.

We have examined the transcript of testimony in this cause, and we cannot express better what the testimony reveals than the findings of the Commission itself. We therefore set them forth here verbatim:

"5. Jane Doe testified that at a time subsequent to the completion of the divorce proceedings in which he had represented her, but while she still was indebted to him for legal services, he engaged her in conversation during which he mentioned that he had read in the paper about women that were prostitutes at the college and who had children to support and that times were rough. During this conversation, he kept asking Jane Doe how she felt about things along that line.

"6. Jane Doe testified that Respondent contacted her following the conclusion of Jane Doe's divorce proceedings. He asked if she would be interested in entertaining his clients for cash and that she would not have to worry about her bill with him. She hung up the telephone. She thought he was referring to sexual activity (tr. 182-183). Respondent denied the calls testified to by Jane Doe. There was admitted into evidence Respondent's Exhibit A which was a transcript of a recorded conversation between Jane Doe and Respondent, the conversation having been secretly recorded by Jane Doe in Respondent's office on April 8, 1987. That conversation was taped by Jane

Doe without Respondent's knowledge. Respondent introduced the transcript in evidence. Jane Doe talked with attorney Mike Cok, and following that conversation decided to go back to Respondent's office with a tape recorder and record the conversation. On page 2 of Exhibit A, Jane Doe referred to a prior conversation which was not denied by Respondent, as follows:

" 'But, ah, I wanted to reflect back on a conversation that we have had. You had called me and told me that we could kind of wipe my bill clean —'

"Respondent replied, '— it's wiped clean.'

"On page 7 of Exhibit A, Jane Doe said, 'Ah, when you called me before I assumed you had a figure in mind.' Respondent replied, 'I didn't, but everything is negotiable. Um what —.' Jane Doe said, 'I have absolutely no idea.' Respondent relied, 'I don't either.'

"From this, it appears that there were prior conversations. Prior to taping the conversation, Jane Doe's attorney, Mike Cok, talked about taping the conversation. He knew she was going to carry a tape recorder, but did not tell her to do so, nor did he advise her that it was an invasion of privacy to do so (tr. 187 and 188). The transcript was not used for any purpose other than the proceeding before the Commission on Practice. It was not taken to the police or the sheriff or anybody else (tr. 187). Jane Doe initiated the conversation that was taped, and had made an appointment with Respondent to talk with him (tr. 190).

"7. On page 7 of Exhibit A, the following conversation is shown as having taken place:

" 'JANE DOE: Have you ever done this before?

" 'RESPONDENT: No, not really, Uh, I've had, you know, clients say, who want to ah — you know, ask me if I know of a lady — they'll go out to the bars and try and pick up ah — women, and that kind of thing. Ah, I have no idea. It depends upon you.

" 'I guess we're ah-just up in the air. Most of them have money, you know. Um, I don't know. What ah-What do you think is a fair price?

" 'JANE DOE: I don't know. I really don't know. I've never done this before.

" 'RESPONDENT: Um, ————— thing where ah — I don't want to make it look like um, ah, soliciting for any illegal act. Ah, I don't want to get caught up into that whole situation. You know what I mean, I don't mean to get myself into that whole boondoggle mess. Ah —

" 'JANE DOE: Can I be frank with you?

" 'RESPONDENT: Sure.

" 'JANE DOE: Am I expected to sleep with them?

" 'RESPONDENT: That — that would be up to you, you know.

" 'JANE DOE: What do you expect?

" 'RESPONDENT: What do I expect? I expect you to show them a good time.

" 'JANE DOE: I mean, you apparently are going to pay me some way or another, so what do you expect. Lets just —

" 'RESPONDENT: I just want them to be — have a good time. That's you know, all I'm concerned about. That's —

" 'JANE DOE: Make 'em happy.

" 'RESPONDENT: Ah, yeah, I mean show 'em a good time, but an, you know what goes on that's between you and them. Ah, I just want them to be happy with respect to a good time while they're here in Bozeman.

" 'JANE DOE: Okay, but you would just directly arrange it, you know?

" 'RESPONDENT: I could see that you directly get the money, you're not going to ————— for me.

" 'JANE DOE: Okay, ————— the cost of what.

" 'RESPONDENT: It 's a question of ah — money that we're talking.

" 'JANE DOE: Well, why don't you decide. Ah, give me a tele-phone call. I'm usually home —

" 'RESPONDENT: What's your telephone number.

" 'JANE DOE: 6-7011.

" 'RESPONDENT: Six, what?

" 'JANE DOE: 6-7011.

" 'RESPONDENT: 586-7011?

" 'JANE DOE: Yeah. And, right now, I'm going to meet a friend for lunch in Livingston and I have to leave so —

" 'RESPONDENT: Okay. I have to get to the Elks Club. Um, yea, well. Yeah, that way maybe what — assuming that you were still get that list you've got the ability of showing them. What kind of money would you want in order for you to have — in order for you to — say spend hourly?

" 'JANE DOE: I don't know. I'll think about it and think about it. I'll just go from there and try it out —

" 'RESPONDENT: Say again.

" 'JANE DOE: When you decide, I'll decide. Then we'll come to a —

" 'RESPONDENT: Agreement?

" 'JANE DOE: Happy medium.

" 'RESPONDENT: Yeah, sure. That's always interesting, a happy medium. Now, with respect to the child custody problem and the other problem you've got, I'll be more than willing to ah — help you out any way I can and ah — ah — I can —'

"8. Later the same day that the conversation was taped, Respondent called Jane Doe and said that he had decided to pay her $100.00 an hour for entertaining his clients. She understood that to refer to sexual favors.

"9. Respondent testified that he did not disagree with the transcript at all, Respondent's Exhibit 3 (tr. 204)."

The objections of Bechhold to the foregoing findings of the Commission are that Finding No. V is not a finding at all but merely a repetition of the testimony of the witness Jane Doe; that the taped conversation shows that he was not owed "an attorney's fee at the time of the conversation because it had been 'wiped clean' and that the amount of the debt, $30, was an insufficient inducement for the transactions contemplated." He further contends that Jane Doe asked him at one point whether he knew of any good looking bachelors, and that he had replied in a joking way that he did and maybe would even pay her to go out with them. He contends that his testimony was that he was just trying to make her feel good, and that the subject was dropped "like that." He objects to other findings on the grounds that they were merely summaries of the witness' statement without a finding by the Commission as to the truth of the witness' statements. He emphasizes that never at any point did Jane Doe testify that he had asked her to sleep with anyone and that there was never such a direct question asked of her. He contends there is nothing illegal about an escort service. Moreover, he contends that the conclusions of law based on those findings have no substantial basis and that the Commission never in direct words stated that there was "clear and convincing evidence" to support the findings or conclusions.

This Court does not have the advantage of the Commission members, who had before them the persons testifying, and an opportunity directly to judge of their credibility. Before this Court is a cold record, and it speaks out loudly, and clearly and convincingly, what the conversations between Bechhold and Jane Doe entailed. It is

plain and obvious that Bechhold was suggesting to her that she engage in acts of prostitution with his clients without directly saying so. When Jane Doe asked him if frankly, he wanted her to sleep with his clients, he could very well then have answered directly and without equivocation "No, that is not my suggestion or purpose, I do not want you to do that." What Bechhold did not say in the taped conversation or otherwise is as damning as his quoted statements. His purpose is substantiated by his earlier and later telephone conversations testified to by Jane Doe, in which he expressly offered her $100 an hour for such services as she might render.

We therefore sustain the findings of the Commission as clear and convincing with respect to Bechhold's dealings with Jane Doe. Implicit in that holding is that not only did he engage in the reprehensible purpose of securing her services as a prostitute, but that in denying it now he is not telling the truth.

## VI

We most unfortunately cannot agree with the recommendations of the majority of the Commission on Practice that Mr. Bechhold be suspended from the practice of law for a period of three months. We must also respectfully not agree with the minority who counseled at least a suspension of six months. It is clear that Mr. Bechhold must be disbarred from the practice of law.

In his brief and meteoric career as a lawyer, Mr. Bechhold has amply demonstrated that he is incompetent to practice law, and that he represents a danger to those clients who may entrust their property, their careers, or indeed their lives in his hands.

We would be forced to the conclusion that he must be disbarred even without the reprehensible chapter involving Jane Doe. His representation of the clients in the other matters presented before the Commission demonstrate that he is inadequately prepared by training, education and intellectuality, to represent clients in serious matters. Accordingly,

IT IS ORDERED:

1. The matter of Jerry R. Bechhold, attorney and counselor of law, having been deemed fully submitted to the Supreme Court, and the Supreme Court having considered the matter following filing of objections, and briefs from the respective parties, the Supreme Court determines that the appropriate discipline, pursuant to Rule 9(E) of

the Rules for Lawyer Disciplinary Enforcement, requires that Jerry R. Bechhold be disbarred from the practice of law in the state of Montana.

2. The date of January 18, 1989, at 10:00 a.m. thereof, before the Supreme Court in its chambers in the Justice Building, Helena, Montana, be and the same hereby are set as a time and place for the entry of formal disbarment of Jerry R. Bechhold.

3. The Clerk shall notify the Commission, its special counsel, the respondent Jerry R. Bechhold, and respondent's counsel of the time and place for the appearance of Jerry R. Bechhold for his formal disbarment, by serving a copy of this opinion and order as hereafter provided.

4. If respondent determines to appear in person at such time, he may be accompanied by counsel, and may make a statement thereat with respect to the discipline to be imposed. Because Bechhold's appearance is granted under Rule 9(E), we have determined that oral argument is not necessary in this case.

5. From the date of this order, until January 18, 1989, at the hour above specified, Jerry R. Bechhold is hereby suspended from any and all practice of law in the state courts of Montana.

6. Jerry R. Bechhold shall pay the costs incurred by the Commission on Practice in connection with these proceedings, including this review, which costs shall be supplied by an affidavit of the Chairman of the Commission and filed in this cause. Upon such filing, the amount of such costs shall be and constitute a judgment against Jerry R. Bechhold.

7. Jerry R. Bechhold may waive in writing his right to appear personally before this Court on January 18, 1989, as aforesaid, or his right to appearance by counsel, in which event his formal disbarment will be determined by an entry of an order on or after that date.

8. A copy of this order, certified by the Clerk of this Court, served upon counsel for respondent, and upon respondent, by ordinary mail, shall be and constitute and perform the office of an original order duly served from this Court and shall be binding upon respondent as though personally served.

DATED this 29th day of December, 1988.

s/J.A. Turnage, Chief Justice
s/John Conway Harrison, Justice

s/William E. Hunt, Justice
s/John C. Sheehy, Justice
s/Fred J. Weber, Justice
s/R.C. McDonough, Justice
s/L.C. Gulbrandson, Justice

## ORDER FOR DISBARMENT

On December 29, 1988, this Court made and entered its Opinion and Order for disbarment in the Matter of Jerry R. Bechhold and in that Order designated Wednesday, the 18th day of January, 1989, at 10:00 a.m. thereof, before the Supreme Court in its chambers in the Justice Building, Helena, Montana, as the time and place for the entry of formal disbarment of said Jerry R. Bechhold.

On January 17, 1989, Jerry R. Bechhold, by telephone, informed personnel of the Court that he would not appear at the time and place stated. Because such notice was not in writing as directed in the order of December 29, 1988, the Court made itself available to open court in its chambers at the time and place designated, and said Jerry R. Bechhold did not appear thereat nor did any person make a statement in his behalf. Accordingly, the Court deems that sufficient notice of the time and place of the order of disbarment and his opportunity to appear has been given to Jerry R. Bechhold and he declines to further appear and make a statement.

THEREFORE, the Court, being advised in the premises,

IT IS HEREBY ORDERED:

1. Jerry R. Bechhold be and hereby is disbarred from the practice of law in the State of Montana.

2. Said Jerry R. Bechhold shall forthwith comply with Rule 21 of the Rules for Lawyer Disciplinary Enforcement promulgated by this Court in at least the following respects:

A. Jerry R. Bechhold shall notify or cause to be notified by registered or certified mail, return receipt requested, (1) all clients being represented in pending matters; (2) any co-counsel in pending matters; and (3) any opposing counsel in pending matters, or, in the absence of such counsel, the adverse parties, that the Court has ordered the disbarment of Jerry R. Bechhold and that Jerry R. Bechhold is therefore disqualified to act as a lawyer.

B. Jerry R. Bechhold shall deliver to all clients being represented in pending matters any papers or other property to which they are entitled and shall notify them and any counsel representing them of a suitable time and place where the papers and other property may be obtained, calling attention to any urgency for obtaining the papers or other property.

C. In the event that any client of Jerry R. Bechhold does not obtain another lawyer, it shall be the responsibility of Jerry R. Bechhold to notify in writing the judge of the pending matter.

3. This order is effective immediately upon entry. From and after this time and date Jerry R. Bechhold shall not engage as a lawyer for any new cases or legal matter of any nature. Jerry R. Bechhold shall refund any part of any fees paid in advance which have not been earned.

4. Within twenty days hereafter, to-wit, on or before February 7, 1989, Jerry R. Bechhold shall file with this Court and the Commission on Practice an affidavit showing (1) that he has fully complied with the provisions of this order; (2) a list of all state, federal or administrative jurisdictions to which he is admitted to practice; and (3) his resident or other addresses to which communications may thereafter be directed to him.

5. A copy of this order, certified by the Clerk of this Court, served upon counsel for respondent, and upon respondent, by ordinary mail, shall be and constitute and perform the office of an original order duly served from this Court and shall be binding upon respondent as though personally served.

DATED this 18th day of January, 1989.

s/J.A. Turnage, Chief Justice
s/William E. Hunt, Justice
s/John C. Sheehy, Justice
s/Fred J. Weber, Justice
s/R.C. McDonough, Justice
s/L.C. Gulbrandson, Justice